UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELVIN D. HARRIS,

        Plaintiff,

v.                                 Case No. 1:14-cv-985
                                 Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Supplemental Security Income (SSI).

Plaintiff was born in 1975. PageID.172. He was found disabled as of May 1, 2004, pursuant to a determination dated June 1, 2004. PageID.48. Upon a periodic review of plaintiff's entitlement to disability benefits, the Commissioner determined that he was no longer disabled as of October 1, 2009.[1] *Id.* The decision to terminate plaintiff's benefits was not based on medical evidence, but rather due to his failure to cooperate. PageID.84-96. At that time, the agency was unable to determine whether medical improvement occurred, stating pertinent part:

> Overall, this Hearing Officer finds that there has been no new evidence provided to evaluate Claimant's condition. Therefore, this Hearings Officer finds that there is insufficient evidence in file to assess Claimant's function, due to the Claimant failing to attend his hearing, or provide any evidence to the contrary. There were forms that were completed in regards to Claimant's function; however, there

---

[1] *See* 20 C.F.R. § 416.994(a) ("[t]here is a statutory requirement that, if you are entitled to disability benefits, your continued entitlement to such benefits must be reviewed periodically").

has been no new evidence provided.  He was requested to attend her hearing, and failed to cooperate.  Without cooperation, this Disability Hearing Officer is unable to reach a conclusion in this case.

PageID.92.

The agency's determination that plaintiff's disability ceased in October 2009 was made pursuant to 20 C.F.R. § 416.994(b)(4)(ii), which provides that:

(4) *Second group of exceptions to medical improvement*.  In addition to the first group of exceptions to medical improvement, the following exceptions may result in a determination that you are no longer disabled.  In these situations the decision will be made without a determination that you have medically improved or can engage in substantial gainful activity.

* * *

(ii) *You do not cooperate with us*.  If there is a question about whether you continue to be disabled and we ask you to give us medical or other evidence or to go for a physical or mental examination by a certain date, we will find that your disability has ended if you fail, without good cause, to do what we ask.  Section 416.1411 explains the factors we consider and how we will determine generally whether you have good cause for failure to cooperate.  In addition, § 416.918 discusses how we determine whether you have good cause for failing to attend a consultative examination.  The month in which your disability ends will be the first month in which you failed to do what we asked.

20 C.F.R. § 416.994(b)(4)(ii).  *See* Defendant's Brief (docket no. 18, PageID.480).

Plaintiff was allowed to file an untimely request for an administrative hearing before an Administrative Law Judge (ALJ).  PageID.48.  Plaintiff appeared *pro se* at the hearing, which was held on April 30, 2013 in Las Vegas, Nevada.  *Id.*  The issue at the hearing was whether plaintiff's disability ended.[2]  *Id.*  In a written decision entered on June 21, 2013, an ALJ found that plaintiff's

_____

[2] *See* 42 U.S.C. § 1382c(a)(3)(A) (providing that " an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

disability ended on October 1, 2009, and that he has not become disabled again since that date. PageID.55-56. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

---

lasted or can be expected to last for a continuous period of not less than twelve months").

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs an eight step sequential evaluation for a continuing disability review which differs from the five step sequential evaluation used to determine if a claimant is disabled in the first instance. *See* 20 C.F.R. § 416.994(f)(1)-(8). The eight step sequential evaluation has been summarized as follows:

(1) Is the individual engaged in substantial, gainful activity?

(2) If the individual is not engaged in substantial, gainful activity, does he have an impairment or combination of impairments meeting or equaling the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?

(3) If the individual does not have an impairment meeting or equaling a listing, has there been medical improvement in his condition?

(4) If there has been medical improvement, is it related to the individual's ability to do work?

(5) If the individual has no medical improvement or if the medical improvement is not related to his ability to work, do any of the exceptions noted in 20 C.F.R. § 404.1594(d), (e) apply? If none of them apply, the individual's disability will be found to continue.

(6) If medical improvement is shown to be related to the individual's ability to do work or if one of the first group of exceptions applies, are the individual's current impairments severe?

(7) If the individual's impairments are severe, can he engage in past, relevant work?

(8) If the individual cannot engage in past, relevant work, can he engage in other work in the national economy?

*Mueller v. Commissioner of Social Security*, No. 1:09-cv-695, 2010 WL 3475494 at *3 (W.D. Mich. Aug. 10, 2010), report and recommendation adopted, 2010 WL 3475436 (W.D. Mich. Sept. 2, 2010), quoting *Brewster v. Barnhart*, 366 F.Supp.2d 858, 870-871 (E.D. Mo. 2005).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

As discussed, the ALJ found that the most recent favorable decision finding that plaintiff was disabled is the determination dated June 1, 2004. PageID.49. This is known as the "comparison point decision" (CPD). *Id.* At the time of the CPD, plaintiff had a medically determinable impairment of "non-union of the left tibia/fibula fracture" which was found to meet the requirement of Listing 1.06 ("Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones"). PageID.50. *See* Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ did not make a finding at step one (i.e., whether plaintiff was engaged in substantial gainful activity).[3] At step two, the ALJ found that as of October 1, 2009, plaintiff had the following medically determinable impairments "status post tibia/fibula fracture, with ORIF [open reduction internal fixation] and post-surgical complications due to noncompliance, chronic pain

---

[3] The Court notes that the ALJ referred to a seven-step evaluation under 20 C.F.R. § 416.994. PageID.48.

5

syndrome, borderline intellectual functioning, learning disorder and hernia." PageID.50. The ALJ also found that since October 1, 2009, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*

At step three, the ALJ found that plaintiff had medical improvement which occurred as of October 1, 2009, i.e., "a decrease in medical severity of the impairment present at the time of the CPD." PageID.51. At step four, the ALJ found that the medical improvement was related to the ability to work because, as of October 1, 2009, plaintiff's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD (20 CFR 416.994(b)(2)(iv)(A)). *Id.* Specifically, "[a]n x-ray of the claimant's left leg in May 2010 revealed solid healing of the prior tibial fracture, with fracture line no longer visible." *Id.* Step five was not applicable. At step six, the ALJ found that as of October 1, 2009, plaintiff continued to have a severe impairment or combination of impairments that caused more than minimal limitation on his ability to perform basic work activities. *Id.*

At step seven, the ALJ found that "[b]eginning on October 1, 2009, based on the current impairments, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he is also limited to unskilled work and brief and superficial interaction with the public." PageID.52. The ALJ also found that plaintiff had no past relevant work. PageID.54. Finally, at step eight, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the national regional economy. PageID.55. Specifically, plaintiff could perform the following unskilled work: final assembler (200,000 jobs nationally); document preparer (2,000,000 jobs nationally); and envelope addressor (160,000 jobs

6

nationally).  *Id.*  Accordingly, the ALJ determined that plaintiff's disability ended on October 1, 2009, and that he has not become disabled since that date.  PageID.55-56.

### III.  ANALYSIS

Plaintiff raised three issues on appeal.

> **A.    The ALJ committed reversible error by choosing a date for the end of plaintiff's disability that does not appear to coincide with any medical evidence.**

As discussed, the agency discontinued plaintiff's benefits as of October 1, 2009 for lack of cooperation without determining whether plaintiff experienced medical improvement.  The ALJ later determined that plaintiff experienced medical improvement and was no longer disabled as of October 1, 2009.  Now, plaintiff contends that there was no evidentiary basis to support the ALJ's determination.

Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled."  20 C.F.R. § 416.994(b)(1)(ii).  "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)."  *Id.*  Here, there was no particular event which led the ALJ to determine that the medical improvement occurred on or before October 1, 2009.  The medical evidence to support this determination is sparse.  The ALJ made a general observation that "[t]he claimant has not received the type of treatment one would expect for a disabled individual."  PageID.52.  There is no question that plaintiff was disabled as of June 1, 2004, when he was found disabled under Listing 1.06.  The ALJ reviewed records from July 2009 which indicated that plaintiff still had problems with his leg:

Treatment notes from Forest General Hospital in July 2009 reveal that the claimant had intact motor and sensory function and no focal neurological deficits noted on examination. (Exhibit B4F/7-8).   He continued to complain of left leg pain. However, treatment notes from Hackley Community Care Center reveal that he appeared to be in no acute distress.  He had no focal sensory or motor neurologic deficit.   There was no erythema or warmth in the left leg.   There was also no tenderness or swelling of muscle groups in anterior or posterior lower leg. Additionally, he reported that his leg pain was worse with the weather change, and at other times, it was more tolerable and manageable.  (Exhibits B5F/6-8, Bl0F/42).

PageID.52-53.

The next medical record referenced is from May 2010, several months after plaintiff experienced medical improvement, with the ALJ observing:

An x-ray of the claimant's left leg in May 2010 revealed solid healing of the prior tibial fracture, with fracture line no longer visible. (Exhibit Bl0F/64).  He had normal gait, normal bulk and tone, 5/5 motor strength and full range of motion in all joints. (Exhibit Bl0F).

PageID.53.

Based on this record, there is no evidence of medical improvement which coincides with October 1, 2009.  At most, the ALJ's evaluation of the evidence indicates that plaintiff was still having problems in July 2009 and that there was "solid healing of the prior tibial fracture" by May 2010.   Based on this record, there is no logical connection between October 1, 2009 and the date that plaintiff experienced medical improvement. *See York v. Massanari*, 155 F. Supp. 2d 973, 980 (N.D. Ill. 2001) (the court did not uphold the ALJ's decision regarding medical improvement, where the reasons given by the ALJ "did not build a bridge between the medical evidence of record and her finding that medical improvement occurred").  *See also*, *Mueller*, 2010 WL 3475494 at *5  (in reversing and remanding ALJ's decision, the court observed that the medical improvement date was not related to any particular occurrence or examination, but rather appeared "to be an arbitrary date

chosen between March 2006 and May 2007"). Similarly, in this case, the October 1, 2009 medical improvement date is not related to any particular occurrence or medical examination. Rather, it coincides with the date that plaintiff was found not disabled for failing to cooperate with the agency.

The ALJ's finding that medical improvement occurred on October 1, 2009 is not supported by substantial evidence. Accordingly, this matter should be reversed and remanded pursuant to sentence four of § 405(g) for a re-evaluation of whether plaintiff experienced medical improvement and if so, when the improvement occurred.

> **B.     The ALJ committed reversible error because he did not inquire as to plaintiff's ability to afford medical treatment.**

Plaintiff does not present any meaningful argument on this alleged error, which appears to claim that the ALJ improperly drew adverse inferences about his failure to obtain medical treatment for alleged symptoms without first considering an explanation for that failure. *See* SSR 96-7p ("Evaluation of symptoms in disability claims: assessing the credibility of an individual's statements"). Accordingly, the Court deems this issue waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

> **C.     The ALJ committed reversible error by using improper boilerplate language.**

Finally, plaintiff contends that the ALJ used meaningless boilerplate language to evaluate his credibility. Where a claimant contends that the ALJ made only a "boilerplate" credibility finding, this contention has no merit where the ALJ provided a thorough explanation elsewhere in the decision setting forth his reasons for doubting the claimant's account. *See Cox v.*

9

*Commissioner of Social Security*, 615 Fed. Appx. 254, 260 (6th Cir. 2015).  Here, the ALJ gave specific reasons for discounting plaintiff's credibility with respect to his claims that he suffers from continuing disability due to status post tibia/fibula fracture, with ORIF and post-surgical complications due to noncompliance, chronic pain syndrome, borderline intellectual functioning, learning disorder, hernia, pain in his left leg, pain in his head, and the inability to stand on his legs for a long time.  PageID.52-54.  In this regard, the ALJ pointed out that plaintiff has certain abilities which support the residual functional capacity determination (e.g., he has no problem with personal care, prepares daily meals without assistance, goes out alone daily, walks or rides in a car for transportation, shops in stores, handles a savings account, uses checkbooks, reads, watches television, plays video games daily, spends times with others, does not need reminders to go places, starts what he finishes, can pay attention and follows instructions well).  PageID.54.   Accordingly, plaintiff's claim of error is denied.

## IV.  CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to re-evaluate whether plaintiff experienced medical improvement and, if so, when the improvement occurred.  A judgment consistent with this opinion will be issued forthwith.


Dated:  March 25, 2016                          /s/ Ray Kent
                                                RAY KENT
                                                United States Magistrate Judge